Joe Nathan WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–97–497CR.

Court of Appeals of Texas,
Beaumont.

Jan. 20, 1999.

Submitted Dec. 14, 1998.

Decided Jan. 20, 1999.

which N.R. saw the alleged perpetrator made

Stephen Simonsen, Conroe, for appellant.

Michael A. McDougal, Dist. Atty., Gail Kikawa McConnell, Asst. Dist. Atty., Conroe, for state.

Before WALKER, C.J., BURGESS, and STOVER, JJ.

N.R.'s identification of appellant unreliable.

## OPINION

EARL B. STOVER, Justice.

A jury found appellant Joe Williams guilty of two counts of aggravated robbery and assessed his punishment for each offense at sixty years confinement in the Texas Department of Criminal Justice, Institutional Division; the sentences were to run concurrently. In a single point of error, Williams claims "the trial court erred in receiving the 'in court identification' evidence over the appellant's objection." We affirm the trial court's judgment and conviction.

Keith Walker, the owner of a convenience store, witnessed an aggravated robbery at his place of business. He testified he was in the back room of the store and heard Virginia Highland, an elderly woman who assisted him in the store, yell for help. He jumped up from his bed in the back room, went into the main room of the store, and saw two well dressed black men at the counter. Walker was about eighteen feet from one of the men and two or three feet further away from Williams. Walker described Williams as being 6' or 6' 2" tall with thinning hair, weighing about 195–200 pounds, and wearing a yellow-striped shirt. According to Walker, Williams was taller than the other man in the store and not as heavy. The second suspect was wearing a dark green, pull-over shirt. The man closest to Walker turned, saw Walker, and uttered a sound. Williams then looked up over the first man, pointed the gun at Walker, and shot at him. When Williams fired at Walker a second time, Walker hit the floor. After Williams fired the third shot, Walker jumped up from the floor and took off after the two men. Walker stated that from the moment he entered the room until Williams fired the three shots at him, he "was looking directly" at Williams. Although the store owner testified that approximately two minutes elapsed between the time he entered the room and the two men left the store, he specifically viewed the suspects from two to fifteen seconds. Walker again saw Williams as Williams and his accomplice went out the door of the store, got into a vehicle driven by a third suspect, and drove away.

After the shots were fired and the men had left the scene, Virginia Highland called 9–1–1. While Highland was on the telephone, the 9–1–1 operator informed her the suspects had been caught. Shortly thereafter, deputies from the sheriff's office arrived at the store and transported Walker to the location where the officers had apprehended the suspects. While in route, Walker saw the suspects' car and immediately identified it as the one in which the men had left the store.

At the scene of the arrest, three men were sitting handcuffed in patrol cars; each suspect was in a separate car. As Walker walked by each police car, an officer asked him if he recognized the individual in the car. Walker responded that he did not recognize the first one shown to him; he did, however, recognize the second man as being the shorter of the two men in the store. When shown a third man, Walker identified him as the shooter and immediately stated that the suspect had changed clothes. According to Walker, when the shooter came into the store, he was wearing a yellow-striped shirt. A shirt fitting that exact description was found on the floorboard of the suspects' car.

Walker acknowledged, both at trial and during the suppression hearing, that he had seen a newspaper article containing an account of the robbery and a picture of the three suspects. Cutting the article and picture out of the paper, he put the material on his store window. He felt the information would help answer the customers' questions about the incident and thereby keep the frequent inquiries from interfering with his business. When the prosecutor asked Walker if his recollection of the robbery was based on the newspaper article, Walker responded it was not. The picture in the newspaper, he said, was not clear and could not have aided him in identification of the suspects. Walker stated he "remembers what happened in the store." Based on his memory of that event, he testified at trial that Williams was the one who shot at him. According to Walker, there was no possibility that he was mistaken in his identification of Williams as the shooter.

After the jury was impaneled, but prior to the reading of the indictment, the trial court heard evidence relating to appellant's motion to suppress which sought to exclude Walker's testimony. The trial judge denied appel-

lant's motion and allowed Walker's testimony at trial.

◼ The substantive legal question before us in Williams' single point of error is whether Walker's in-court identification of Williams was wrongly admitted in violation of his due process rights. *See Stovall v. Denno,* 388 U.S. 293, 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). In determining if the suggestiveness of an out-of-court identification prohibits a later in-court identification, the court must look at (1) whether the out-of-court procedure was impermissibly suggestive and (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *Barley v. State,* 906 S.W.2d 27, 33 (Tex.Crim.App.1995); *see also Loserth v. State,* 963 S.W.2d 770, 771–72 (Tex.Crim.App.1998). According to *Loserth,* reliability is the critical question in the admission of identification evidence.

> [I]f the totality of the circumstances reveals no substantial likelihood of misidentification despite a suggestive pretrial procedure, subsequent identification testimony will be deemed "reliable," "reliability [being] the linchpin in determining the admissibility of identification testimony."
>
> *Webb v. State,* 760 S.W.2d 263, 269 (Tex. Crim.App.1988) (quoting *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). The following five non-exclusive factors should be "weighed against the corrupting effect of any suggestive identification procedure in assessing reliability under the totality of the circumstances":
>
> 1. The opportunity of the witness to view the criminal at the time of the crime;
> 2. The witness' degree of attention;
> 3. The accuracy of the witness' prior description of the criminal;
> 4. The level of certainty demonstrated by the witness at the confrontation; and
> 5. The length of time between the crime and the confrontation. . . . .
>
> *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972)[.]

*Loserth,* 963 S.W.2d at 772.

◼ Here, the alleged out-of-court identification involved a variation of the one man showup procedure. After being taken by officers to the scene of the arrest, Walker was shown three black males, one by one, and was asked if he recognized any of them. The last person shown to him was the one he identified as the shooter. This identification procedure, appellant claims, is impermissibly suggestive.

◼ We recognize that a certain amount of suggestiveness is inherent in any "on-the-scene" confrontation in the presence of police officers. *See Stovall,* 388 U.S. at 302, 87 S.Ct. 1967; *Garza v. State,* 633 S.W.2d 508, 512 (Tex.Crim.App.1981). Indeed, identification procedures where suspects are viewed singly, while not per se unnecessarily suggestive, have been uniformly criticized for being unduly suggestive. *See Stovall,* 388 U.S. at 302, 87 S.Ct. 1967. When an impermissibly suggestive pretrial identification procedure is used, the witness's subsequent in-court identification of the defendant will not be allowed unless the prosecution can establish an independent basis for the reliability of the in-court identification of the defendant besides the pretrial identification at issue. *See Harris v. State,* 827 S.W.2d 949, 960 (Tex.Crim. App.1992); *Forte v. State,* 935 S.W.2d 172, 175 (Tex.App.—Fort Worth 1996, pet. ref'd). A totality of the circumstances test is employed to determine whether the in-court identification is independently reliable. *Delk v. State,* 855 S.W.2d 700, 706 (Tex.Crim.App. 1993).

◼ In the instant case, we do not find the out-of-court procedure—in which Walker viewed the suspects one at a time—to be per se impermissibly suggestive. Nevertheless, even if we were to presume it was so, the record, as detailed below, reveals no "very substantial likelihood of misidentification."

Guided by the Texas Court of Criminal Appeals in *Loserth,* we consider the five *Biggers* factors deferentially in a light favorable to the trial court's ruling. *Loserth,* 963 S.W.2d at 773. Viewing the factors, which are all issues of historical fact, in this light, we then weigh them *de novo* against the "corrupting effect" of the suggestive pretrial identification procedure. *Id.* at 773–74.

We consider the first two *Biggers* factors. Did the witness have an opportunity to view Williams at the time of the offense, and what was the witness's degree of attention? The record reveals Walker witnessed the offense. He indicated he was eighteen feet from the first suspect and twenty to twenty-one feet away from Williams. Walker watched the two men "about a second or two" before they ever noticed him. From the time he walked into the room until the shots were fired, Walker stated he was looking directly at Williams. He again looked at Williams' face for several seconds as Williams and his accomplice were leaving the store. We conclude the first two factors are met.

Next, we consider the accuracy of Walker's prior description of Williams. Walker described Williams as being about 6' or 6' 2"—taller than the other man. According to Walker, the shooter weighed from 195 to 200 pounds, had thinning hair, was lighter skinned than the other man, and was wearing a yellow-striped shirt. There is nothing in the record which contradicts Walker's testimony concerning the height differential between the two suspects. There is in the record, however, an officer's testimony stating that Williams, at 5' 10" tall, weighed approximately 180 pounds. Although we note the variance between the officer's testimony and Walker's testimony regarding Williams' height and weight, the difference is not a significant one.

Another of the *Biggers* factors is the witness's level of certainty. The record supports a high level of certainty. While Walker was riding with the officer to the arrest scene, he saw the suspect's car in the distance and identified it as the car involved in the robbery. Out of the three men shown to him, he identified Williams as the one who did the shooting. Upon identifying Williams as the shooter, Walker also immediately stated "but he's changed his clothes"; the yellow and green striped shirt, which Walker testified Williams was wearing during the robbery, was found on the floorboard of the car. At both the trial and the suppression hearing, Walker testified his identification was based upon what happened at the time of offense. He further testified there was no possibility that he was mistaken in his identification.

The final *Biggers* factor concerns the length of time between the crime and the confrontation. Here, no more than thirty minutes elapsed between the point in time that Williams and his companions fled the scene of the robbery and the moment Walker identified the two men at the arrest scene. The record reveals that Williams and the other two suspects were captured within three to four minutes of the robbery. The officers arrived at the store within ten minutes from the time the suspects were apprehended. Walker was then driven to the arrest scene, some four minutes from the store.

Considering all the *Biggers* factors deferentially in a light favorable to the trial court's ruling and weighing them all against the "corrupting effect" of the suggestive pretrial identification procedure, we conclude the identification procedure was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

The trial court did not err in admitting the in-court identification testimony of Keith Walker. Appellant's single point of error is overruled, and the judgment of the trial court is affirmed.

AFFIRMED.