TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00636-CR







William Earl Johnson, Jr., Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 8330, HONORABLE CHARLES J. HEARN, JUDGE PRESIDING








 This appeal is taken from a conviction for aggravated robbery with the use of a
handgun. See Tex. Penal Code Ann. § 29.03(a)(2) (West 1994). The jury found appellant
William Earl Johnson, Jr. guilty as a party and assessed his punishment at fifteen years'
imprisonment. The jury also found as alleged that a deadly weapon had been used in the
commission of the offense. (1)


Issue


 Appellant advances a single issue:  "Were appellant's right[s] to due process under
the Fourteenth Amendment of the United States and the Texas Constitution[s] violated because
of the use of identification testimony from a witness that was subjected to impermissibly
suggestive identification procedures?" (2) We will affirm the conviction.


Background


 The sufficiency of the evidence to sustain the conviction is not challenged. A
recitation of the facts is necessary to place the issue in proper perspective. Elizabeth (Betty)
Wells, the victim, worked as telephone operator at the Wal-Mart Superstore in Marble Falls. On
November 2, 1997, she worked until 11:00 p.m., then shopped for a few minutes, and proceeded
to her van in the Wal-Mart parking lot. As she was placing her purchases into her van, she was
accosted by a man later identified as Robert Pettigrew. He pointed a gun at Wells' head and
repeatedly demanded money. He told Wells to get into her van or he would kill her. Wells
pretended to be deaf and not to understand his orders. She told Pettigrew that she did not have
any money. Pettigrew hit her in the head with the gun, took her purse, and left. With blood
running from her head, Wells made her way back into the store. Shortly thereafter, Wells
identified Pettigrew in a one-on-one confrontation when the police returned Pettigrew to an area
near the scene. She also made an in-court identification of Pettigrew explaining that she got a
good look at him while he held the gun to her head. Wells identified the gun as a .38 caliber
handgun based on her own experience with firearms.

 Renee Preston White is the witness whose in-court identification is challenged by
appellant on appeal. White testified that, after receiving a telephone call from her son, she drove
to the Wal-Mart store to pick him up when his work shift ended. As she drove onto the parking
lot her car experienced engine trouble. She stopped and raised the hood of her car. At this point
she heard "a lady screaming that she was deaf." White then saw a woman up against a van and
"a black man" holding a gun to the woman's head and ordering the woman to get into the van or
that he would shoot her. White explained she was 300 feet away and could clearly hear as the
sound echoed on the parking lot. White looked around and saw a man talking nearby on a
telephone but his vision of the van was blocked. There was also a small white truck on the
parking lot. Its motor was running and its lights were off. Another "black" man was sitting in
the truck. White did not want to place herself in danger but decided "to try to stop the situation
in any way I could." As she ran towards the van, the man in the white truck stuck his head out
of the truck window and yelled to the man at the van, "Let's get out of here, we're going to get
caught." White was within twenty-five feet of the man in the truck at the time and got a good
look at him.

 White asked the man at the van not to shoot the woman. At this time that man hit
Wells in the head with the gun, grabbed her purse, ran to the white truck, threw the purse through
the driver's window, and got in the passenger side of the vehicle which then sped away
northbound on Highway 281.

 White laid Wells on the parking lot, ran to the store, and asked that someone call
9-1-1. The police arrived in about ten minutes. A little later the police informed White that they
had "a couple in custody" and asked if she could possibly identify them. White was taken to the
parking lot of the old Wal-Mart store next to the current store. In the headlights of the police
cars, White testified that she identified appellant within three seconds, and that he was the driver
of the white truck she had seen on the parking lot who had yelled to the man with the gun.

 A number of law enforcement officers heard the call or dispatch about the robbery. 
One officer stopped the described white truck about four miles north of Marble Falls on Highway
281 within Burnet County. Appellant was the driver of the truck and Pettigrew was the
passenger. They were placed under arrest and handcuffed. In the truck the officers found a
loaded .38 caliber handgun with a box of .38 caliber ammunition and a sales receipt for the
ammunition from a Wal-Mart store in Copperas Cove. Later Wells's purse was found in a ditch
along the highway about a quarter of a mile from the scene of the stop.

 The officers returned appellant and Pettigrew to the parking lot of the old Wal-Mart
in Marble Falls. There they were shown separately and singly. Wells identified Pettigrew, and
White identified appellant and Pettigrew. Wells and White were taken separately to the scene and
were not together during the identification procedure. Appellant's extra-judicial statement was
admitted into evidence at trial. In it appellant stated that he lived in Copperas Cove; that on
November 2, 1997, he and Pettigrew drove to Fredericksburg to return his daughter to his ex-wife; that on his return home he stopped at the Wal-Mart store in Marble Falls to get some rest
before driving home; that he had the flu; that he and Pettigrew were there about an hour when
Pettigrew got out of the truck; that he (appellant) went back to sleep; that Pettigrew jumped back
into the truck and told him to "go" and not to turn on the truck's lights; that as he was driving
off he heard a lady screaming; that upon inquiry Pettigrew told him that he (Pettigrew) had hit a
lady with the gun; that Pettigrew started going through a lady's purse but threw it out when they
saw a police officer drive by and turn around; that Pettigrew wanted to throw the gun "out" but
"I said 'no' because it was not mine"; and that they were stopped by the police.


Discussion


 The single issue presented by appellant is whether White's in-court identification
of him was improperly admitted in violation of his due process rights. See Stovall v. Denno, 388
U.S. 293, 301-02 (1967). In determining if the suggestiveness of an out-of-court identification
procedure prohibits a later in-court identification of the accused, the court must look at (1)
whether the out-of-court procedure was impermissibly suggestive and (2) whether that suggestive
procedure gave rise to a very substantial likelihood of irreparable misidentification. See Simmons
v. United States, 39 U.S. 377, 384 (1968); Barley v. State, 906 S.W.2d 27, 33 (Tex. Crim. App.
1995). An analysis under these steps requires an examination of the "totality of the
circumstances" of the particular case under consideration and a determination of the reliability of
the in-court identification. See Barley, 906 S.W.2d at 33; Cantu v. State, 738 S.W.2d 249, 251
(Tex. Crim. App. 1987). In Loserth v. State, 963 S.W.2d 770 (Tex. Crim. App. 1998), the Court
of Criminal Appeals pointed out that reliability is the critical question in the admission of
identification evidence.


[I]f the totality of the circumstances reveals no substantial likelihood of
misidentification despite a suggestive pretrial procedure, subsequent identification
testimony will be deemed "reliable," "reliability [being] the linchpin in
determining the admissibility of identification testimony." 


Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988) (quoting Manson v.
Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). The following
five non-exclusive factors should be "weighed against the corrupting effect of any 
suggestive identification procedure in assessing reliability under the totality of the
circumstances."


 1. The opportunity of the witness to view the criminal at the time of the
crime;

 2. The witness' degree of attention;

 3. The accuracy of the witness' prior description of the criminal;

 4. The level of certainty demonstrated by the witness at the confrontation;
and

 5. The length of time between the crime and the confrontation. . . . 


Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972)[.]



Loserth, 963 S.W.2d at 772.

 In the instant case, the out-of-court identification involved a variation of the one-man show-up or one-on-one confrontation. After being arrested on the highway by police
officers, appellant and Pettigrew were returned to a parking lot near the scene of the robbery. 
They were then shown separately and singly to each witness while handcuffed and under the
headlights and "take down" lights of police vehicles. Renee White identified appellant. It is this
identification procedure that appellant claims is impermissibly suggestive.

 It is recognized that a certain amount of suggestiveness is inherent in any "on the
scene" confrontation in the presence of police officers. See Stovall, 388 U.S. at 302; Garza v.
State, 633 S.W.2d 508, 512 (Tex. Crim. App. 1981) (op. on reh'g.). The admission of evidence
of a one-man show-up without more does not, however, violate due process. See Garza, 633
S.W.2d at 512. Nonetheless, identification procedures where suspects are viewed singly have
been uniformly criticized for being unduly suggestive. See Stovall, 388 U.S. at 362; Williams v.
State, 985 S.W.2d 240, 242 (Tex. App.--Beaumont 1999, no pet.). (3) When an impermissibly
suggestive pretrial identification procedure is utilized, the witness's subsequent in-court
identification of the accused is not admissible unless the State can establish an independent basis
for the reliability of the in-court identification besides the pretrial identification at issue. See
Harris v. State, 827 S.W.2d 949, 960 (Tex. Crim. App. 1992); Williams, 985 S.W.2d at 242. 
A totality-of-the-circumstances test is employed to determine whether the in-court identification
is reliable. See Delk v. State, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993).

 In the case sub judice, we do not find the pretrial identification procedure--in which
White viewed appellant singly shortly after the offense--to be impermissibly suggestive per se. 
Even if it were so, the record as detailed below, reveals no "very substantial likelihood of
misidentification." 


 Following Loserth, we consider the five Biggers factors deferentially in a light
favorable to the trial court's ruling. See Loserth, 963 S.W.2d at 773. Viewing the factors which
are all issues of historical fact, in this light, we then weigh them de novo against the "corruption
effect" of the suggestive pretrial identification procedure. See id. at 773-74.

 The difficulty at the outset is that the record was not well developed by either party
as to the Biggers factors. The witness Renee White did have the opportunity to view appellant
at the time of the crime. She was walking towards the van where a man was holding a gun to a
woman's head when appellant stuck his head out of a truck window. White got a good look at
his face. She was twenty-five feet away. The second factor concerns the witness's degree of
attention. White described what she saw transpiring at the van, observed that a man was talking
on a telephone but that his vision was blocked and he was not aware of what was happening,
noticed that the motor of the small white truck in which appellant was seated was running and the
truck's lights were off. White heard appellant yell, "Let's get out of here, we're going to get
caught." The first two Biggers factors have been met.

 As to the accuracy of the witness's prior description of appellant, the record is
meager. White related that she described the white truck to the officers who arrived on the scene. 
She was not questioned about any prior description of appellant that she may have given the
police. As White only saw appellant seated in the truck, she may not have been able to give a
description of height and weight. Officer Lee Pickett testified that at the scene he received from
"a witness" (not otherwise identified) a description of the truck and of the two men. He did not
detail the description he received other than saying the two men were described as being "black." 
It is thus difficult to respond to the third factor because the record simply was not developed.

 The level of certainty demonstrated by the witness at the confrontation is the fourth
Biggers factor. The record clearly shows a high level of certainty by White, who had no difficulty
in identifying appellant within three seconds at the confrontation which has already been
described. There is no showing that any suggestion was made to her by a police officer or anyone
else. White never identified anyone else as the suspect.

 As to the length of time between the crime and the on-the-scene confrontation, the
record reflects the time was approximately thirty minutes. The police arrived on the scene within
ten minutes. Appellant and Pettigrew were apprehended on the highway a short time thereafter. 
They were immediately taken to the scene of the confrontation. White and Wells were
individually taken to the scene of the confrontation from the Wal-Mart store. The time periods
were similar to those in Williams, 985 S.W.2d at 243.

 Appellant urges that there was no evidence as to the lighting in the Wal-Mart
parking lot where the nighttime offense occurred. This is true. Neither party made inquiry of
any witness as to the lighting. There was evidence that the Wal-Mart store was open for business
at the time. Neither Wells nor White indicated any difficulty in seeing or describing events on
the parking lot at the time. Circumstantial as well as direct evidence may be considered. See
McGee v. State, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989). In view of all the evidence, the
lack of direct evidence on lighting, standing alone, is not significant.

 Considering all the non-exclusive Biggers factors deferentially in a light favorable
to the trial court's ruling and weighing them all against the "corrupting effect" of the suggestive
pretrial identification procedure, we conclude that the identification procedure was not so
impermissibly suggestive as to give rise to a very substantial likelihood of irreparable
misidentification. Moreover, we observe that appellant in his written statement admitted being
in the white truck on the parking lot at the time of the offense and leaving with Pettigrew.

 The trial court did not err in admitting the in-court identification of Renee White. 
Appellant's contention that his due process rights under the Fourteenth Amendment to the United
States Constitution were violated is without merit. (4)


 The judgment of conviction is affirmed.



 


 John F. Onion, Jr., Justice

Before Chief Justice Aboussie, Justices Patterson and Onion*

Affirmed

Filed: January 27, 2000

Do Not Publish





















* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. A deadly weapon finding is now applicable to a defendant convicted as a party. See
Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2000).
2. In a pretrial hearing the trial court overruled appellant's general pretrial motion to
suppress in-court identification testimony. In his brief, appellant makes no mention of the
suppression motion, hearing, or ruling nor does he make any express claim that the suppression
ruling was in error. All record references to evidence supporting his broad issue on appeal are
to the trial evidence. After its development at trial he asked for no further relief. When a pretrial
motion to suppress is overruled, a defendant need not subsequently object at trial to the same
evidence to preserve error on appeal. See Livingston v. State, 739 S.W.2d 311, 334 (Tex. Crim.
App. 1987); Powell v. State, 837 S.W.2d 809, 811 (Tex. App.--Houston [1st Dist.] 1992, pet.
ref'd).


 The State raises no question about the preservation of error. We shall consider appellant's
issue.
3. In Garza, 633 S.W.2d at 512, the court noted the many situations where the use of the
on-the-scene confrontation is necessary despite some degree of suggestiveness involved.
4. Appellant failed to brief separately his claim of violation of the state constitution, thus
he cannot prevail on that claim. See Busby v. State, 990 S.W.2d 263, 270 (Tex. Crim. App.
1999); Barley, 906 S.W.2d at 36; Heitman v. State, 815 S.W.2d 681, 690 n.23 (Tex. Crim. App.
1991); McCambridge v. State, 712 S.W.2d 499, 501-02 n.9 (Tex. Crim. App. 1986). To brief
adequately a state constitutional issue, an appellant must proffer specific argument and authorities
supporting his contention under the state constitution. See Eldridge v. State, 940 S.W.2d 646,
650 (Tex. Crim. App. 1996); Riddle v. State, 888 S.W.2d 1, 7 (Tex. Crim. App. 1994). This
is not accomplished by merely citing the same authorities supporting a federal constitutional
violation. There must be additional authority. See Eldridge, 940 S.W.2d at 650-51. Appellant
has presented nothing for review. See Jones v. State, 944 S.W.2d 642, 656 n.25 (Tex. Crim.
App. 1996). We decline to pursue appellant's state constitutional claim included in the single
issue or point of error. See Corwin v. State, 870 S.W.2d 23, 27 n.2 (Tex. Crim. App. 1993);
Johnson v. State, 853 S.W.2d 527, 533 (Tex. Crim. App. 1992).



the offense and leaving with Pettigrew.

 The trial court did not err in admitting the in-court identification of Renee White. 
Appellant's contention that his due process rights under the Fourteenth Amendment to the United
States Constitution were violated is without merit. (4)


 The judgment of conviction is affirmed.