

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00438-CR

Alfredo Arasa **HERRERA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 9246
Honorable Kirsten Cohoon, Judge Presiding

Opinion by:　Velia J. Meza, Justice

Sitting:　　Irene Rios, Justice
　　　　　H. Todd McCray, Justice
　　　　　Velia J. Meza, Justice

Delivered and Filed: August 27, 2025

AFFIRMED

Alfredo Arasa Herrera appeals the jury's verdict convicting him of indecency with a child. Due to a special sex offender enhancement, the trial court imposed a mandatory life sentence.[1] On appeal, Herrera raises two points of error. First, Herrera argues the child's in-court identification was "unnecessarily suggestive" in violation of his due process rights under the U.S. Constitution.

---

[1] *See* TEX. PENAL CODE § 12.42(c)(2).

Second, Herrera challenges the admission of evidence of a prior conviction for sexual assault of a child—during the guilt/innocence phase of the jury trial—as unfairly prejudicial. We overrule Herrera's two points of error and affirm the trial court's judgment.

## BACKGROUND

Herrera was charged with a single count of indecency with a child by contact alleged to have occurred between November 2014 and August 2015. The victim, referred to as "Diego Smith"[2] to protect his privacy, is Herrera's half-brother; both share the same father, Francisco Balderas. Although Herrera is Balderas's biological son, they did not meet until Herrera was 37 years old. After meeting, Balderas hired Herrera to work in his landscaping business.

In 2014, Herrera and three other men lived in a separate RV on the same property as Balderas, his wife, Esther Zuniga, and their son Diego. The men only entered the family's trailer to eat, shower, and use the bathroom. Herrera resided with the family intermittently for around ten months. The family stayed on the property until 2019, when a fire destroyed their trailer, prompting their move to an apartment in Boerne, Texas.

Diego explained that while Herrera was working for Balderas's landscaping company, between November 2014 and August 2015, Herrera sexually abused him in his parents' trailer. He recounted being in his bedroom playing with toys before going to the bathroom, where, while urinating, Herrera emerged from behind the shower curtain, wrapped himself around Diego's back, and used one hand to touch his genitals and the other to muffle his mouth. Diego described the contact as lasting five to six seconds, during which he heard Herrera breathing heavily. Afterwards, Diego retreated to his parents' bedroom in tears. Though his mother saw him crying, he did not

---

[2] To protect the victim's privacy, we refer to him by the pseudonym used at trial. *See* TEX. R. APP. P. 9.10.

disclose what happened. Diego reported that Herrera threatened to kill his parents if he told them about the incident.

Eventually, Diego disclosed what happened—albeit vaguely—to his kindergarten teacher at the end of the school year when he repeated kindergarten. He also exhibited behavioral issues, such as hiding under his desk and crying; his teacher reported these to Diego's mother. However, investigators found that the teacher did not recall Diego disclosing any sexual abuse. At home, Diego had nightmares and, according to his mother, would say, "stop touching me" in his sleep after the alleged assault.

In 2020, now in fifth grade, Diego's behavioral issues resurfaced when Herrera again came into proximity with the family at their new apartment in Boerne. Around this time, Diego was "acting bad" and frequently yelled at his mother. Then, one Friday in November 2020, while riding in the car after school and upset with his mother, Diego made an outcry that Herrera had sexually assaulted him in kindergarten. He explained the abuse took place while his mother was occupied in the kitchen and expressed frustration at not being able to tell her at the time.

Esther Zuniga reported the incident to the Boerne Police Department on November 27, 2020. Police interviewed her and began their investigation. Upon realizing that the alleged crime took place in Kendall County, the Boerne Police Department transferred the case to the Kendall County Sheriff's Office. Zuniga also told her husband, Mr. Balderas, about Diego's allegation, to which he responded in shock.

Shortly after the police report, on December 3, 2020, Diego underwent a forensic interview at the Kerrville Child Advocacy Center. At trial, the forensic interviewer explained that children's trauma memories evolve as they age and that children might use age-appropriate words even after growing older—consistent with Diego's use of the term "pee pee" in his testimony.

Sergeant Jonathan Quade testified about a photo identification conducted during the investigation. Because Diego's mother had identified Herrera as someone living in their home at the relevant time, a single-photo line-up was used instead of the typical six-photo process. The State introduced State's Exhibit 11, a video of Diego identifying Herrera in the line-up. Quade described Diego's reaction to seeing Herrera's photo as one of shock: "his eyes got big, and he froze." The defense raised no objection to this exhibit.

Investigator Roy Laubach of the Kendall County Sheriff's Office, the lead investigator, confirmed through Homeland Security border-crossing records that Herrera was present in the U.S. in early November 2014. Laubach collected all relevant case documentation, including CPS records and Diego's forensic interview, and conducted further interviews with Diego's mother. Laubach ultimately filed the case with the District Attorney's Office, believing Diego never wavered from his account.

The defense's theory rested largely on testimony from family members. While describing Diego as a "good kid" and hardworking, they also suggested he was his mother's "golden child" and might be manipulated by her for her own benefit. They implied a lack of opportunity for the alleged offense and questioned Esther's credibility, noting previous incidents where she allegedly lied to intimidate or manipulate family members. They posited she might be motivated to lie for citizenship or out of resentment toward Herrera's financial assistance from Balderas.

On May 25, 2024, Herrera was found guilty by the jury on the charge of indecency with a child by contact. After hearing the testimony on punishment, the trial court sentenced Herrera to life in prison.

**DISCUSSION**

## I.     In-Court Identification

In his first point of error, Herrera argues that the police line-up was so unnecessarily suggestive that it tainted the in-court identification procedure, in violation of Herrera's due process rights under the U.S. Constitution.

### A. Applicable Law

The Due Process Clause prohibits the admission of identification evidence when its introduction is so unfair that it violates fundamental principles of justice. *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). An in-court identification following a pretrial procedure that is impermissibly suggestive and conducive to misidentification may constitute a denial of due process. *Simmons v. United States*, 390 U.S. 377, 384 (1968); *Gamboa v. State*, 296 S.W.3d 574, 581 (Tex. Crim. App. 2009). Whether the accused has been denied due process is determined under the totality of the circumstances. *Neil v. Biggers,* 409 U.S. 188, 197 (1972); *Barley v. State,* 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995); *Jackson v. State*, 657 S.W.2d 123, 127 (Tex. Crim. App. 1983); *Page v. State*, 125 S.W.3d 640, 647 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd).

Texas courts have consistently held that an in-court identification may be inadmissible if it has been tainted by a pretrial photographic identification procedure that was impermissibly suggestive and created a substantial likelihood of irreparable misidentification. *See Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008); *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999); *Loserth v. State*, 963 S.W.2d 770, 771–72 (Tex. Crim. App. 1998).

When a defendant challenges an in-court identification, we apply a two-step analysis. *Loserth v. State*, 985 S.W.2d 536, 543 (Tex. App.—San Antonio 1998, pet. ref'd). First, we must

assess whether the pretrial procedure was impermissibly suggestive under the totality of the circumstances. *Id*. If so, we then determine whether the procedure was so suggestive that it gave rise to a substantial likelihood of irreparable misidentification. *Id*. The defendant bears the burden of proving both elements by clear and convincing evidence. *Id*. If the defendant carries their burden, the State must demonstrate by clear and convincing evidence that the identification was of "independent origin." *Id*. (quoting *United States v. Wade*, 388 U.S. 218, 242 (1967).

When an identification procedure is challenged on appeal, we apply a bifurcated standard of review. Legal determinations—specifically, whether the identification procedure was impermissibly suggestive—are reviewed *de novo*, allowing the appellate court to independently assess the issue without deference to the trial court. *See Loserth*, 963 S.W.2d at 771. Conversely, factual findings related to the reliability of the identification are reviewed under a deferential standard, favoring the trial court's ruling and considering the record in the light most favorable to that decision. *Id*. at 773–74.

Under federal law, the admissibility of an in-court identification is governed by due process considerations, with the central inquiry being reliability—not merely the suggestiveness of the identification procedure. The U.S. Supreme Court has held that identification testimony is admissible if, under the totality of the circumstances, it is sufficiently reliable to overcome any taint of suggestiveness. *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977); *Neil v. Biggers,* 409 U.S. 188, 199–200 (1972). The federal standard focuses on whether the identification poses a "substantial likelihood of irreparable misidentification," considering the totality of the circumstances. *Amador v. Quarterman,* 458 F.3d 397, 414 (5th Cir. 2006) (quoting *Brathwaite*, 432 U.S. at 114).

The reliability factors—namely, the witness's opportunity to view the suspect, degree of attention, accuracy of prior description, level of certainty, and time elapsed between the crime and identification—are treated as historical facts, and thus subject to deferential review on appeal. *Id.* at 773; *Williams v. State*, 985 S.W.2d 240, 242 (Tex. App.—Beaumont 1999, no pet.).

Additionally, Texas courts have recognized that even when a pretrial identification procedure is found to be impermissibly suggestive, an in-court identification may nonetheless be admissible if the witness had a prior opportunity to observe the accused that provides an independent basis for the identification. *Lesso v. State* 295 S.W.3d 16, 25 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

## B. Preservation of Error

Most constitutional claims cannot be raised for the first time on appeal unless they were timely presented to the trial court. Due process rights are generally considered forfeitable unless they fall into the category of waivable-only rights or absolute requirements. *Hawkins v. State,* 964 S.W.2d 767, 770 (Tex. Crim. App. 1998). [3]

Rule 33.1 of the Texas Rules of Appellate Procedure requires error to be preserved in the trial court as a prerequisite to appellate review. Specifically, that a timely objection was made which stated the ground relied upon, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1. In *Pena,* the Court of Criminal Appeals held that a defendant must clearly articulate the specific legal theory underlying a due process claim to preserve it for appellate review. *Pena v. State,* 285 S.W.3d 459, 464 (Tex. Crim. App. 2009). To avoid forfeiting a complaint on appeal, the party must "let the trial judge know what he wants, why he thinks he is

---

[3] Building upon due process concerns, the Court of Criminal Appeals has established a protocol for challenging in-court identification. *Perry v. State,* 703 S.W.2d 668, 673 (Tex. Crim. App. 1986); *Martinez v. State*, 437 S.W.2d 842, 848 (Tex. Crim. App. 1969).

entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Id.*

In this case, Herrera failed to preserve any due process claim for appellate review. A thorough examination of the trial record reveals that defense counsel filed several pretrial motions; however, none of these filings specifically alerted the trial court to concerns regarding either the out-of-court identification procedures or the anticipated in-court identification.[4] No objection was raised and no request made for a hearing outside the jury's presence to assess the admissibility of identification evidence.

Having determined that Herrera failed to preserve the error for appellate review, we overrule his first point of error.

## II.     Admission of Prior Conviction

In his second point of error, Herrera contends that the trial court erred by admitting evidence of a prior conviction for indecency with a child.  He argues that its prejudicial effect substantially outweighed its probative value, citing Rule 403 of the Texas Rules of Evidence.

During a preliminary hearing held outside the jury's presence, the State presented testimony from witnesses involved in Herrera's prior case, along with certified copies of the indictment and final judgments, to establish his 1996 conviction for indecency with a child by contact.[5] Although the defense filed no written objection, counsel objected during the hearing

---

[4] The pretrial filings—including the Defendant's Notice of Appearance, Waiver of Arraignment, discovery requests, witness disclosures, business records notice, motion for interpreter, and motion for withdrawal of counsel—did not raise any due process concerns regarding Herrera's identification. No due process objections were made during the May 10, 2024, pretrial hearing, the May 20, 2024, hearing on outcry witness statements, or the post-jury selection hearing on Herrera's prior conviction. During trial, defense counsel did not object to Diego Smith's in-court identification of Herrera, nor the photo used in the single-photo lineup or the video of Diego identifying Herrera.

[5] During a hearing outside the presence of the jury, the State presented testimony from Hector Guerrero and his daughter, V.E. Mr. Guerrero testified that he once observed Herrera lying on a bed with V.E. positioned on top of him, while Herrera held her buttocks and moved in a manner Guerrero described as sexual. Guerrero further stated that after V.E. got off Herrera, he observed that Herrera had an erection. V.E., who was seven years old at the time of the alleged offense in 1996, testified that Herrera would make his genital contact her genitals.

under Rule 403, arguing that the prior conviction was more prejudicial than probative. The trial court sustained the objection to the testimony, but overruled the objection to the judgment of conviction, implicitly finding that its probative value outweighed any unfair prejudice.[6]

Before we can reach the merits of Herrera's second point of error, we must first determine if the right to complain of the evidence on appeal has been preserved. Generally, it is not necessary to renew an objection to evidence before a jury when the objection to the proffered evidence has been made outside the jury's presence and overruled. *Livingston v. State,* 739 S.W.2d 311, 334 (Tex. Crim. App. 1987).

However, when an appellant affirmatively states "no objection" to the admission of evidence—particularly evidence to which an objection is not required under *Livingston*—the appellant waives any prior objection and forfeits the right to raise the issue on appeal. *Dean v. State*, 749 S.W.2d 80, 83 (Tex. Crim. App. 1988); *cf. Graves v. State*, 513 S.W.2d 57, 59 (Tex. Crim. App. 1974) (holding error was not waived by failure to object to admission of evidence where "trial court had immediately before overruled the motion to suppress").

The reporter's record indicates that Herrera's trial counsel was silent when the prior conviction evidence was admitted. Nonetheless, the State argues in a footnote that the record mistakenly attributes a statement of "no objection" to counsel for the State. According to the State,

---

[6] DEFENDANT'S COUNSEL: Right. It is the same offense, but I'm arguing under a rebalancing test, and I am distinguishing the difference -- the differences under the first prong as to the contents' probative value.

THE COURT: Okay. Thank you. Is there anything else you have to say?

DEFENDANT'S COUNSEL: I mean, I would like -- so in the alternative, if the Court is going to admit the prior, we ask that it be limited to just the judgment and not any testimony, and certainly not any testimony about whatever is going on with the siblings because he hasn't been convicted for that.

THE COURT: But right now what I have -- I concur that the judgment comes in, but the testimony at this point I don't have that.

STATE'S COUNSEL: Okay.

THE COURT: I just don't. And I'm not saying that you can't reurge it at some point in time and have another hearing outside of the jury, but at this point I think that allowing the testimony that I just heard to come in doesn't fall within where I am. However, I do agree that the judgments do.

however, this was spoken by Herrera's counsel.[7] We note that the State's contention was raised for the first time after the record was filed in this court, and thus we "*may* submit the dispute to the trial court for resolution." TEX. R. APP. P. 34.6(e)(3) (emphasis added). Rather than exercising our discretion under Rule 34.6 and delaying the resolution of this case, we presume without deciding that Herrera preserved his Rule 403 challenge and address the merits of his argument.

### A. Rule 403 and Article 38.37

We review a trial court's ruling on the admission of a prior conviction for an abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). When reviewing a ruling under Rule 403, we reverse "rarely and only after a clear abuse of discretion." *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

Article 38.37 of the Code of Criminal Procedure allows the admission of evidence of prior sexual offenses for any relevant purpose in the prosecution of certain sexual offenses involving children. However, this evidence is still subject to Rule 403, which permits exclusion if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other factors. TEX. R. EVID. 403. The trial court must balance the following factors:

(1) the inherent probative force of the proffered item of evidence,

(2) the proponent's need for that evidence against,

(3) any tendency of the evidence to suggest decision on an improper basis,

(4) any tendency of the evidence to confuse or distract the jury from the main issues,

---

[7] STATE'S COUNSEL: Your Honor, at this time the State would like to offer State's Exhibits 13A, 13B, 13C, and 13D into evidence, pending objection from defense counsel.
(State's Exhibit Nos. 13A-13D offered)
STATE'S COUNSEL: No objection, Your Honor.
THE COURT: No objection, 13A, B, C, and D so admitted into evidence.
(State's Exhibit Nos. 13A-13D admitted)

(5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and

(6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

In this case, the defense's theory called into question the credibility of Diego's outcry testimony, specifically, that Diego's account of the sexual contact with Herrera was fabricated. The defense also asserted that Diego's mother fabricated the allegations to obtain immigration benefits, or out of resentment toward financial support provided to Herrera by her husband. Weighing against admission, the prior conviction was decades old and was of a depraved nature that could potentially affect the jury in an emotional way. However, Herrera's conduct and the age of the previous victim were nearly identical to the present case. *See West v. State*, 554 S.W.3d 234, 240 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (considering Rule 403 objection to evidence of a sexual act committed 29 years prior, involving similar conduct with a similarly aged victim). And little time was devoted to developing the prior conviction. Only court documents were admitted and no testimony was elicited about the details of the offense—reducing the risk of undue delay and distraction.

The prosecution's theory depended almost entirely on Diego's account. The crime occurred in private, and only Herrera and Diego could directly testify to what occurred. Thus, the evidence was necessary to lend credibility to the victim, to rebut the defense's theory that the complainant was manipulated, and that Herrera lacked the opportunity or disposition to commit the alleged offense. The trial court conducted a hearing outside the jury's presence and found that a jury could reasonably conclude beyond a reasonable doubt that Herrera committed the prior offense. *See* TEX. CODE CRIM. PROC. art. 38.37, § 2-a. We cannot say the trial court clearly abused its discretion by overruling Herrera's objection. *See Keller v. State*, 604 S.W.3d 214, 228 (Tex. App.—Dallas 2020,

pet. ref'd) (holding that trial court properly overruled Rule 403 objection because the prior conviction was necessary to rebut defensive theory that victim fabricated her story).

## CONCLUSION

Upon review of the record and applicable standards, we find no error in the trial court's judgment. Herrera waived error by failing to object regarding the reliability of the in-court identification or his due process rights. Additionally, the trial court did not abuse its discretion in overruling Herrera's Rule 403 objection. We affirm the judgment of the trial court.


Velia J. Meza, Justice

DO NOT PUBLISH